ZEHMER, Judge.
Claimant appeals an order denying him wage loss benefits on the ground that he did not perform an adequate good faith job search. While we do not approve all the reasons cited by the deputy, we conclude that the record supports the deputy’s decision and affirm.[1]
Claimant injured his back in a compensa-ble slip and fall accident on December 4, 1981. On January 22, 1982 claimant was first examined by Dr. Csencsitz, an orthopedic surgeon. Dr. Csencsitz eventually opined that claimant reached MMI on December 2, 1982 with a permanent impairment rating of thirteen percent of the body as a whole. He released claimant to work with various restrictions regarding claimant’s ability to lift, bend, sit and stand, and also indicated that claimant should return to “light duty” or “limited duty” work. The final date upon which Dr. Csencsitz rendered an opinion as to claimant’s ability to work was on January 6, 1983, at which time he advised claimant to return to his previous occupation “on an initial part-time basis.”
Claimant filed a claim for wage loss benefits for January, February and March 1985 and a hearing on this claim was held on May 2,1985. The E/C took the position that claimant had not performed an adequate good faith job search. Claimant submitted a job search list for each of the three months which consisted of a listing of twenty employers contacted during each month. He testified that he informed most of the prospective employers of his limitations. He also testified that he took a tape recorder with him to his interviews and used the tape recorder in order to have evidence of his interviews for purposes of filling out job search forms. The tape recorded interview with Captain Titus at Globe Security Company in February, 1985 was introduced into evidence at the hearing. The transcript of this interview reveals that claimant was unable to secure employment because he indicated that he had a medical limitation of only four hours of work per day and the prospective employer had only full time shifts. Mr. Bu-beck, claimant’s rehabilitation counselor, was also in attendance at this interview and testified that he tried to discourage claimant from using the tape recorder because he felt that it would threaten claimant’s ability to get a job. Claimant did not tell Captain Titus, or any other prospective employer, that interviews were being tape recorded, and Captain Titus specifically testified he was unaware that the conversation was being taped. According to claimant and Mr. Bubeck, however, the tape recorder was in plain view throughout the entire interview.
On May 16, 1985 the deputy entered an order denying wage loss benefits for the following reasons: (1) By bringing a recording device to his interviews, claimant *1156 imposed an unwarranted hindrance upon his job search effort; (2) claimant’s primary emphasis in speaking to Captain Titus was on his disability and the things that he could not do, with very little being said by claimant indicating any positive desire to accept employment that might be available; (3) claimant’s work efforts are insincere and he is voluntarily limiting his employability by sabotaging employment interviews in order to not secure employment; and (4) claimant indicated that he could not work any longer than a four hour shift, but there are no medical records or reports to indicate that claimant should limit his employment to only four hours per day.
Initially, we disapprove the deputy’s conclusion that wage loss benefits should be denied because claimant used a recording device in his interview with Captain Titus. The uncontroverted evidence in the record shows that the reason claimant used the tape recorder was because he was unable to legibly write down information regarding employer’s contacted and, therefore, he used the tape recorder to secure the necessary information regarding his job contacts so that his correspondence secretary could take down the information and put it on the job search form. There is no testimony in the record from any prospective employer regarding any adverse effect of the tape recorder on claimant’s job search effort. In fact, Captain Titus specifically testified that he was unaware that the tape recorder was being used. Accordingly, there is no competent evidence showing that the tape recorder was a hindrance to claimant’s job search effort.[2]
We affirm the deputy’s denial of wage loss benefits because the record supports a finding that claimant misrepresented his medical limitations by stating to prospective employers that he had been medically limited to working only four hours per day. No previous order had been entered finding that claimant’s disability from his injury limited his ability to work to four hours per day. Even though on January 6, 1983, Dr. Csencsitz advised claimant to return to his previous occupation on an “initial part-time basis,” this “advice” by Dr. Csencsitz, occurring two years prior to the time period for which wage loss benefits are being sought, does not require the deputy to find that claimant was restricted to working only four hours per day during the months covered by this wage loss claim. Claimant has the burden of proving his entitlement to wage loss benefits, Holiday Care Center v. Seriven, 418 So.2d 322 (Fla. 1st DCA 1982), and he failed to carry this burden by presenting competent medical evidence of such a limitation for this time period. The evidence, taken as a whole, supports the deputy’s finding that claimant was not making good faith efforts to obtain work in his job searches. Hence, we affirm the deputy’s denial of wage loss benefits.
AFFIRMED.
BARFIELD, J., concurs.
NIMMONS, J., concurs specially.

. Claimant previously appealed an order of the deputy commissioner denying him wage loss benefits for an earlier period because he had failed to perform an adequate good faith job search. The order was affirmed on appeal without opinion. Snowdon v. Sambo’s and Cigna, 480 So.2d 1298 (Fla. 1st DCA 1985).

. Section 934.03(2)(d), Florida Statutes (1983), makes unlawful any tape recording of an “oral communication” unless “all parties to the communication have given prior consent" to the recording. “Oral communication” is defined as a communication uttered by a person "exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." § 934.02(2), Fla. Stat. (1983). Although Captain Titus testified that he was unaware that the interview was being recorded, the deputy found, and the E/C argues, that use of the recording device had an adverse effect on claimant's effort to secure employment. The deputy’s finding and the E/C’s argument certainly imply that Captain Titus had knowledge of the tape recorder. Additionally, both claimant and Mr. Bubeck testified that the tape recorder was in plain view. Since neither the deputy nor the E/C have relied upon the provisions of section 934.03 to support denial of benefits to claimant, we do not consider claimant’s use of the tape recorder in the interview with Captain Titus to be fatal to his job search efforts.